**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Floyd Mayweather,<br><br>                    Plaintiff,<br><br>           v.<br><br>The Wine Bistro, LLC, et al.,<br><br>                    Defendants. | Case No.: 2:13-210-JAD-VCF<br><br>**Order on Plaintiff Floyd Mayweather's Emergency Motions to Extend Time for Service of Complaint and Summons Upon Defendants Maurice Flippen [Doc. 23], Anwar "Ward" Jenkins [Doc. 24], Leber Corp. d/b/a Trio Records [Doc. 25], Zakee Boyd [Doc. 26], and ZB Entertainment, LLC d/b/a ZB Bookings [Doc. 27].** |

Pending before the Court are five motions filed by Plaintiff Floyd Mayweather: Emergency Motions to Extend Time for Service of Complaint and Summons Upon Defendants Maurice Flippen [Doc. 23], Anwar "Ward" Jenkins [Doc. 24], Leber Corp. d/b/a Trio Records [Doc. 25], Zakee Boyd [Doc. 26], and ZB Entertainment, LLC d/b/a ZB Bookings [Doc. 27]. All five motions seek an Order from the Court extending the deadline for service of Mayweather's Summons and Complaint, and permitting service on each Defendant via publication and email. No opposition to any of these Motions has been filed.

# I.

## Background[1]

Plaintiff Mayweather, who resides in Las Vegas, is an accomplished professional boxer who is also a businessman and entertainer. Doc. 6, p. 4.[2] Among his business ventures is an executive lifestyle apparel brand called "The Money Team," which doubles as the name of his group of celebrity friends. *See id.* at 5. Mayweather also frequently works as an entertainer by appearing at nightclubs as a "special guest or host," often charging over $100,000 per visit. *Id.* at 4. According to Mayweather, "[t]he nightclubs enjoy increased publicity for their venue as well as the business of throngs of fans that show up to see Mr. Mayweather." *Id.*[3]

Wine Bistro, LLC, a New Orleans nightclub, allegedly had planned a "Super Bowl Kickoff Party" on February 1, 2013. *Id.* at 4. They boasted that Mayweather and unspecified members of "The Money Team" would host the Kickoff Party, and posted advertisements to their Facebook page to that effect. *Id.* at 4-5. These advertisements directed consumers to the website of a promotions and entertainment company, Second to None, where Kickoff Party tickets could be purchased. *Id.* Second to None's website also included advertisements suggesting that Mayweather would appear at the event. *Id.*

Mayweather, who contends that he never agreed to host the Kickoff Party, alleges that he became aware of these advertisements on January 30, 2013, and immediately sent a cease-and-desist letter to both Wine Bistro and Second to None. *See id.* at 6. Mayweather contends he simultaneously emailed the letter to Maurice Flippen, the "contact" listed in the "Whois" registry for Second to None's website. *Id.*[4]

---

[1]This factual description, derived from the Plaintiff's allegations, is intended only for general background and is not intended as any finding of fact.

[2]Mayweather originally brought suit on February 7, 2013, and amended his Complaint on July 7, 2013. Docs. 1, 6.

[3]Mayweather does not specify whether members of "The Money Team" also appear at these events, or whether their appearance has any palpable economic impact.

[4]Mayweather does not define the "Whois" registry in his Complaint.

2

Flippen allegedly called Mayweather's attorney the next day, acknowledged receipt of the cease-and-desist letter, and requested a return phone call; by February 1, 2013, some, but not all, of the promotional material had been removed from Second to None's website. *Id.* Mayweather claims that later on February 1, 2013, his attorney finally contacted Flippen, and Flippen explained that he booked Mayweather for the Kickoff Party through a third party, Trio Records, Inc. *See id.*[5] Trio had itself procured Mayweather through another entity, ZB Bookings, LLC, which lists Mayweather as a "client" on its website. *See id.* at 6-7.[6]

Mayweather claims that as a result of the unconsented booking, his fans pre-purchased tickets to Wine Bistro's Kickoff Party, only to be disappointed when Mayweather and "The Money Team" failed to appear. *Id.* Mayweather contends that, as a result, his "reputation and overall brand" have been damaged, and clubs will now be less likely to book Mayweather for personal appearances in the future; by contrast, the defendants have used their purported affiliations with Mayweather to "improperly gain revenue from the unjustified use of Mr. Mayweather's likeness and brand names," as well as to bolster their own reputations. *Id.* at 8. He has asserted both federal and state causes of action, seeking legal and injunctive relief.[7]

Mayweather originally brought suit on February 7, 2013, against Flippen, a Louisiana resident, and several other Defendants. Doc. 1, p. 2.[8] No Answer or other responsive

---

[5] Mayweather claims that Leber is the d/b/a of "Trio Records," and that ZB Entertainment is the d/b/a of "ZB Bookings." The Court refers herein to "Trio" and "ZB Bookings" for ease of reference.

[6] Mayweather states only that "[t]he public . . . believes that ZB Bookings can book Mr. Mayweather at will." *See id.* at 7-8. Mayweather does claim that ZB Bookings' use of Mayweather's "image" was done without his permission or consent. *See id.* at 7.

[7] Mayweather brought claims against the Defendants for (1) Unfair Competition under the Lanham Act, 15 U.S.C. § 1125(a); (2) Violation of Rights of Publicity under N.R.S. § 597.770 *et seq.*; (3) Common Law Trademark Infringement; (4) Deceptive Trade Practices under N.R.S. § 598.0903 *et seq.*; and (5) Unjust Enrichment. Doc. 1, pp. 1-2.

[8] The other Defendants were Wine Bistro, 2nd to None Entertainment, LLC, Ernest Johnson, Jr., Ronald Daniels, Blake Turner, and Lee Bates. *Id.* Summonses were returned executed as to all of these Defendants, except Turner, who filed an Answer. Docs. 10, 12, 13, 14, 15, 16. Mayweather has sought, and obtained, a clerk's entry of default against all of these Defendants except Turner. *See* Docs. 17, 18, 19, 20, 21, 22. None of these Defendants is at issue in this Order.

3

pleading was filed by any of the Defendants, and on June 7, 2013, Mayweather filed an Amended Complaint, in which he added ZB Bookings, Zakee Boyd, Trio, and Anwar "Ward" Jenkins as Defendants. Doc. 6, pp. 2-3. According to Mayweather, ZB Bookings is a Georgia limited liability company; Boyd is a natural person living in Georgia; Trio is a Wisconsin corporation; and Jenkins is a natural person living in Wisconsin. *See* Doc. 6, p. 3.

On September 26, 2013, Mayweather filed the five emergency motions currently before the Court. Docs. 23, 24, 25, 26, 27. He seeks leave of the Court to (1) extend the deadline to serve Flippen, Boyd, Jenkins, Trio, and ZB Bookings from October 7, 2013 to December 7, 2013; and (2) effectuate service via email and publication. *See id.* None of these emergency motions is opposed.

## II.

## Discussion

Mayweather contends that he has "good cause" to extend the service period as to Defendants Boyd, Jenkins, Trio, ZB Bookings, and Flippen. He argues that although he has a valid cause of action against all five Defendants and has "demonstrated a length pattern of due diligence in attempting to serve" each Defendant, these attempts have been unsuccessful. *See* Docs. 23, p. 4; 24, p. 4; 25, p. 4; 26, p. 4; 27, p. 4. Thus, it is unlikely that any of the five Defendants will be served prior to the expiration of the service deadline on October 7, 2013. *See id.*

FRCP 4(m) requires service of the Summons and Complaint to be completed within 120 days. *Id.* Rule 4(m) states that "[i]f a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* Rule 4(c) further provides that "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed under Rule 4(m)." *Id.*

4

The Ninth Circuit has interpreted Rule 4(m) as requiring a two-step process for granting extensions of the service period. *See in re Sheenan*, 253 F.3d 507, 512 (9th Cir. 2001). If the Court finds good cause for the service delay, it must extend the time period. A court ascertains "good cause" on a case-by-case basis, the threshold requirement being excusable neglect. *See id.*; *Robinson v. Churchill Community Hospital*, 2007 WL 496819, at *1 (D. Nev. Feb. 12, 2007).

**A.     Defendants Boyd and ZB Bookings**

**1.     Good Cause**

As to Boyd and ZB Bookings, the Georgia Defendants, Mayweather argues that his process server made six attempts to serve these two Defendants "at each" of two locations. Doc. 26, p. 2; Doc. 27, p. 2. A process server first attempted service on August 12, 2013, at 1051 Moreland Drive, Atlanta, GA 30315, but "the address [was] a vacant lot." Docs. 26, p. 9; 27, p. 9. There is no other indication that any additional service was attempted at this specific address. *See id.* The server then unsuccessfully attempted to serve the Summons six times, on August 14, 20, 24, 26, 28, and September 4, 2013, at 3156 Abbey Drive SW, Atlanta, GA 30331. *Id.* at 7. Mayweather has also submitted unsworn "declarations" from his counsel of record that state that "I am advised and understand that, as set forth in the attached Affidavits of Non Service, the process server made numerous attempts for personal service on . . . [Boyd] at the purported *address* for Defendant[s Boyd or ZB Bookings]." Docs. 26, p. 13; 27, p. 13 (emphasis added).

It is not clear why these unsworn declarations refer to the "address" of Boyd and ZB Bookings in the singular, even though the Affidavits submitted show that service at two different addresses was attempted. It is also not clear why Mayweather's Motion refers to six service attempts "at each" of the two listed addresses, when the process server's affidavit states that only one attempt was made at 1051 Moreland Drive. Despite these irregularities, however, it appears that repeated service attempts were in fact made at a specific address. Therefore the Court finds that Mayweather has demonstrated "good cause" for a service extension as to Boyd and ZB Bookings.

## 2.     Requested Relief: Extension of Service and Alternate Service Methods

In his Motion, Mayweather contends that Fed. R. Civ. Proc. 4(f)(4) allows service to be effected "in any other manner," and that Mayweather has fulfilled his obligations under the applicable Nevada rules of procedure to demonstrate that neither Boyd nor ZB Bookings can be reasonably served personally. *See* Docs. 26, p. 3; 27, p. 3. Mayweather contends that, for these reasons, the Court is "justified" in permitting service by publication and/or electronic mail. *See id.*

### a.     Electronic Service

#### i.     Federal Rules

As to Defendant Boyd, Mayweather's citation to Fed. R. Civ. Proc. 4(f) is inapposite, as this provision pertains to service of an individual in a foreign country. Mayweather's Amended Complaint states that Boyd was located in Georgia, and he submits no evidence leading to a contrary conclusion. Thus, service on Boyd must be accomplished pursuant to Fed. R. Civ. Proc. 4(e). The plain language of Rule 4(e) forecloses the possibility of service by email. *See id.* However, the Rule also provides that the service may be completed by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *Id.* at 4(e)(1).

Fed. R. Civ. Proc. 4(h) governs service upon corporations, and provides that service may be made "in the manner prescribed by Rule 4(e)(1) for serving an individual." *Id.* Like Rule 4(e), Rule 4(h) also does not provide for service by email for corporations located within a judicial district of the United States, and neither Mayweather's Amended Complaint nor his supplemental filings show that ZB Bookings is no longer incorporated in Georgia.[9] Therefore, Mayweather is not entitled to serve either Defendant under the federal service provisions.

---

[9] Rule 4(h) incorporates Rule 4(f) only for service which is to be made "at a place not within any judicial district of the United States." Rule 4(h)(2).

6

### ii. Where the District Court Is Located

Nevada's personal service statute appears at Nev. R. Civ. Proc. 4(i). Like the Federal Rules, the plain language of Nevada's law does not provide for service of process on out-of-state defendants via electronic means, and Courts interpreting other provisions of Nevada's service law have found that such service was not contemplated. *United States v. Seventy-One Firearms*, 2006 WL 1983240, at *2 (D. Nev. July 13, 2006) (interpreting Nev. R. Civ. Proc. 4(d)(6)). Thus, the Court finds that neither Boyd nor ZB Bookings may not be served electronically pursuant to Nevada law.

### iii. Where Service Is Made

Mayweather never raises Georgia law as an alternative method of service. Georgia's service law, unlike the Federal Rules or those of Nevada, contains a catchall service "exception" as follows: "[i]n all cases or special proceedings where the requirements or procedure for service, or both, are not prescribed by law and in any situation where the provisions therefor are not clear or certain, the court may prescribe service according to the exigencies of each cases, consistent with the Constitution." Ga. Code Ann. § 9-11-4(j).

Notwithstanding this provision, the Court has found no Georgia case that considered a circumstance "exigent" enough to warrant service via email, and again Mayweather has provided the Court with no indication why this is so. Therefore, the Court finds that there are no grounds for serving either Boyd or ZB Bookings via email.

### b. Publication

Mayweather also contends that he is entitled to serve Boyd and ZB Bookings via publication pursuant to Nevada state law, pointing to Nev. R. Civ. Proc. 4(e)(1)(i). *See* Docs. 26, p. 3; 27, p. 3. As with electronic service, Mayweather's entitlement to serve through this method is incorporated by reference by Fed. R. Civ. Proc. 4(e) and 4(h).

### i. Federal Rules

Mayweather does not specifically point to federal law in support of his argument, and the plain language of the Rules does not provide for service of publication for either

individuals or corporations located within a judicial district of the United States.  Thus, Mayweather must look to state law to determine his entitlement to service by publication.

### ii. Where the District Court Is Located

Nevada procedural rules require that prior to authorizing service by publication, a movant must satisfy the following conditions:

> In addition to methods of personal service, when the person on whom service is to be made resides out of the state, or has departed from the state, or cannot, after due diligence, be found within the state, or by concealment seeks to avoid the service of summons, and the fact shall appear, by affidavit, to the satisfaction of the court or judge thereof . . . such court or judge may grant an order that the service be made by the publication of summons.
>
> Provided, when said affidavit is based on the fact that the party on whom service is to be made resides out of the state, and the present address of the party is unknown, it shall be a sufficient showing of such fact if the affiant shall state generally in such affidavit that at a previous time such person resided out of this state in a certain place (naming the place and stating the latest date known to affiant when such party so resided there); that such place is the last place in which such party resided to the knowledge of affiant; that such party no longer resides at such place; that affiant does not know the present place of residence of such party or where such party can be found; and that affiant does not know and has never been informed and has no reason to believe that such party now resides in this state; and, in such case, it shall be presumed that such party still resides and remains out of the state, and such affidavit shall be deemed to be a sufficient showing of due diligence to find the defendant. This rule shall apply to all manner of civil actions. . . .

*Id.* As noted in the plain language of the statute, the movant must furnish the Court with an "Affidavit" that specifies that the party to be served has either avoided service, or that the party's address is unknown.[10]

Mayweather has not met the threshold requirement of submitting an "affidavit" entitling him to service via publication.  The Affidavits submitted by his process server only state that service attempts were made at a specific time and place, but do not state that the

---

[10]"An Affidavit is a written statement sworn to the by declarant before an officer authorized to administer oaths." *Buckwalter v. District Court*, 234 P.3d 920, 921-22 (Nev. 2010).  Such a document must contain a "Jurat," which is defined as a "declaration by a notarial officer that the signer of a document signed the document in the presence of the notarial officer and swore to or affirmed that the statements in the document are true."  NRS § 240.0035.  "The Jurat is essential, not as a part of the affidavit, but as official evidence that the oath was taken before the proper officer." *MountainView Hospital v. District Court*, 273 P.3d 861, 865 (Nev. 2012) (internal quotations omitted).  Alternatively, the Nevada Supreme Court has found in other cases that a declaration made under penalty of perjury is provided the same weight as a sworn Affidavit. *See id.* (construing affidavit requirement found in medical malpractice statute).

8

Defendant was otherwise unavailable. The "declarations" submitted by his counsel in support of the service efforts contain made as to Boyd and ZB Bookings are neither sworn before an officer authorized to administer oaths, nor are made under penalty of perjury. Bereft of competent evidence that either Boyd or ZB Bookings is unavailable within the confines of the Rule, Mayweather's request to serve these Defendants via publication is denied.

### iii.     Where Service Is Made

Mayweather fails to claim that Georgia law may provide an alternative method of service. Georgia law also permits service via publication, and its controlling provision is substantially similar to Nevada's law. *See* Ga. Code Ann. § 9-11-4(f)(1)(A). Like Nevada, Georgia's law requires that a movant submit an "Affidavit" supporting why service by publication is required. *See id.* Georgia case law has defined "Affidavit" more restrictively than Nevada, as "a statement or declaration reduced to writing, sworn to or affirmed before some officer who has authority to administer the oath, and duly signed by the affiant." *Miller v. Caraker*, 71 S.E. 9, 10 (Ga. App. 1911); *cf. McClintock v. Wellington Trade, Inc.*, 315 S.E.2d 428, 429 (Ga. 1984). Thus, to the degree urged, Mayweather has not demonstrated his entitlement to service by publication under Georgia law.

### c.     Time Extension for Other Service

The Court now turns determines what extension of service time should be made available to Mayweather to serve Boyd and ZB Bookings by personal service.

Mayweather contends that he requires an additional two months to serve Boyd and ZB Bookings but provides no support that this length of time is reasonable. The Court finds that Mayweather has demonstrated his entitlement to an extension of service time, and the Court grants Mayweather an additional sixty (60) days from the expiration of the prior 120-day service period, or until December 7, 2013, to complete proper service upon Defendants Boyd and ZB Bookings.

### B.     Defendants Jenkins, Trio, and Flippen

#### 1.     Defendants Jenkins and Trio

Mayweather's filings as to Jenkins and Trio, the Wisconsin-based Defendants, are substantially identical. As to both Defendants, Mayweather argues that his process server made "eight attempts without answer." Docs. 24, p. 2; 25, p. 2. However, the Proof of Service forms attached to substantiate these contentions list 22 separate dates and times between August 11, 2013, and September 22, 2013, in which service attempts were purportedly made. Docs. 24, p. 8; 25, p. 8. The Proof of Service forms do not specify what addresses were used to attempt service upon either Defendant. Nevertheless, Mayweather submits unsworn "declarations" from his counsel of record that state, "I am advised and understand that, as set forth in the attached *Affidavits* of Non Service, the process server made numerous attempts for personal service on the Defendant Jenkins at known and/or discovered addresses for [Defendants Jenkins and Trio]." Docs. 24, p. 11; 25, p. 11 (emphasis added).

It is not clear why counsel's unsworn "declarations" appear to indicate knowledge of addresses for both Defendants, when none are listed on the Proof of Service forms. Docs. 24, pp. 8, 11; 25, pp. 8, 11. Moreover, Mayweather's counsel refers to the *Affidavits* of non-service in this case, when the separate motions seeking an extension for Jenkins and Trio contain a single Proof of Service form. Finally, there is no explanation for why Mayweather's motions contend that service was attempted on eight occasions, but the process server in this case lists 22 separate purported attempts, each falling on a separate day.

With this conflicting evidence, the Court is unable to conclude that Mayweather has shown good cause to extend the service period for Defendants Jenkins and Trio at this time because it is not clear what attempts have actually been made to serve these Defendants.

#### 2.     Defendant Flippen

As to Flippen, the Louisiana Defendant, Mayweather also contends that he has "good cause" to extend the service period. *See* Doc. 23. There is also a conflict between the three Affidavits submitted by his process server and the unsworn declaration submitted by his

10

counsel, the latter of which states that, according to the process server's "Affidavit," service was attempted at Flippen's "address," although the three Proof of Service Forms reflect service was attempted at three separate address**es**—on one day each. *See* Doc. 23, pp. 6-8.

Compounding this issue is the fact that, unlike the four defendants discussed above, Flippen was named in Mayweather's original Complaint on February 7, 2013. For this reason, the 120-day period for service on Flippen expired on June 7, 2013 - the day the Amended Complaint was filed. Mayweather appears to assume, without additional argument, that the filing of his amended complaint automatically extended the time period for serving Flippen. It did not.

Many courts interpreting Rule 4 have found that while an amended complaint may re-start the service period for newly added defendants, the 120-day period, without some additional showing, is not extended for any defendant previously named. *See Del Raine v. Carlson*, 826 F.2d 698, 705 (7th Cir. 1987); *Bolden v. City of Topeka, Kansas*, 441 F.3d 1129, 1148 (10th Cir. 2006); *Carmona v. Ross*, 376 F.3d 829 (8th Cir. 2004); *Finch v. George*, 763 F. Supp. 967, 968 (N.D. Ill. 1991); *Sanchez v. Torres*, 2008 WL 1701900, at *7 (N.D. Cal. Apr. 10, 2008) (citing *Finch*); *Reeder v. Knapik*, 2007 WL 1851642, at *1 (S.D. Cal. June 26, 2007) (same). Other courts citing *Finch* have found that "filing of an amended complaint is not, on its own, 'good cause' for the delay." *Mopex, Inc. v. American Stock Exchange, LLC*, 2002 WL 342522, at *9 (S.D.N.Y. Mar. 5, 2002).

Mayweather produces no evidence of ever attempting to serve Flippen prior to the expiration of the 120-day period specified in Rule 4(m). Instead, the Proof of Service forms attached to Flippen's Motion indicate that the process server made three unsuccessful attempts to serve the Summons on Flippen between August 7, 2013, and August 9, 2013—two full months after the 120-day period ran. Doc. 8, pp. 5-7. There is no other evidence that the process server even *received* the Flippen Summons before early August. *See id.* The Court finds that Mayweather's arguments and evidentiary support are inadequate to demonstrate good cause for extension of Flippen's service period.

### C.     Exercise of Discretion

Having found that Mayweather failed to demonstrate good cause for extension of the 120-day service period as to Jenkins, Trio, and Flippen, the Court now turns to the appropriate remedy. Where no good cause is shown, the Court has discretion to extend the time period or dismiss the unserved defendant without prejudice from the case. *See United States v. 2,164 Watches, More or Less Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 772 (9th Cir. 2004); *Mann v. American Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003). The Court may extend the period upon finding excusable neglect and additionally may require the plaintiff to demonstrate that (1) the party to be served received actual notice; (2) the defendant would not be prejudiced by the extension; and (3) severe prejudice would result to the Plaintiff. *Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009). "Exercise of discretion to extend time to complete service is appropriate when, for example, a statute-of-limitations bar would operate to prevent re-filing of the action." *Id.*; *see Carr v. International Game Technology*, 770 F. Supp. 1080, 1090 (D. Nev. 2011). Since the plain language of Rule 4 does not "tie the hands of the district court after the 120-day period has expired," the court has discretion to extend the period retroactively. *See Mann*, 324 F.3d at 1090 (9th Cir. 2003).

Although Mayweather has not provided the Court with sufficient reason to extend the service period for Flippen, Jenkins, and Trio, the Court is not convinced that the motion should be denied. Accordingly, the Court will allow Mayweather a second opportunity to demonstrate good cause to extend the service period on these three defendants and to supplement the record with proper affidavits or declarations showing what service efforts have been attempted and whether excusable neglect justifies the reopening of the service period on Flippen.

/ / /
/ / /
/ / /
/ / /

## III.

## Conclusion

Accordingly, based upon the foregoing reasons and with good cause appearing,

**IT IS ORDERED** that Mayweather's Emergency Motion to Extend Time for Service of Complaint and Summons Upon Defendant Zakee Boyd [Doc. 26] is **GRANTED** in part and **DENIED** in part. Mayweather is granted an additional sixty (60) days from the expiration of the prior 120-day service period, or until December 7, 2013, to serve Boyd by personal service; his request to serve via email or publication is **DENIED**.

**IT IS FURTHER ORDERED** that Mayweather's Emergency Motion to Extend Time for Service of Complaint and Summons Upon Defendant ZB Entertainment, LLC d/b/a ZB Bookings [Doc. 27] is **GRANTED** in part and **DENIED** in part. Mayweather is granted an additional sixty (60) days, from the expiration of the prior 120-day service period, or until December 7, 2013, to serve ZB Bookings by personal service; his request to serve via email or publication is **DENIED**.

**IT IS FURTHER ORDERED** that the Court's decisions on Mayweather's Emergency Motion to Extend Time for Service of Complaint and Summons Upon Defendant Maurice Flippen [Doc. 23], Emergency Motion to Extend Time for Service of Complaint and Summons Upon Defendant Anwar "Ward" Jenkins [Doc. 24], and Emergency Motion to Extend Time for Service of Complaint and Summons Upon Defendant Leber Corp. d/b/a Trio Records [Doc. 25] shall be deferred pending the court's review and consideration of supplemental materials. Mayweather shall supplement his motions with a good cause and/or excusable neglect demonstration as to Defendants Flippen, Jenkins, and Trio within 10 days of the date of this Order. Mayweather's failure to adequately supplement his motions within the specified time may lead to dismissal of these three Defendants without prejudice without further notice.

DATED: October 4, 2013.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE