**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

FLOYD MAYWEATHER,

        Plaintiff,

vs.

THE WINE BISTRO, *et al.*,

        Defendants.

Case No. 2:13–cv–210–JAD–VCF

**REPORT & RECOMMENDATION**

This matter involves Floyd Mayweather's publicity and trademark action against The Wine Bistro and 2nd To None Entertainment, LLC. (*See generally* Amend. Compl. #6[1]). Before the court is Mayweather's Amended Motion for Default Judgment (#46). For the reasons stated below, Mayweather's motion should be granted.

**BACKGROUND**

The Wine Bistro is a restaurant, nightclub, and bar in New Orleans, Louisiana. (*See* Amend. Compl. (#6) at ¶ 2). It is located at 1011 Gravier Street, two blocks from the French Quarter and a half mile from the Mercedes-Benz Superdome. In 2013, Gravier Street was a prime location for a restaurant, nightclub, and bar because New Orleans was hosting Super Bowl XLVII between the San Francisco 49ers and the Baltimore Ravens.

The Wine Bistro aimed to profit from the event. In late January, it began publicizing a Super Bowl kickoff party. The Wine Bistro's Facebook and YouTube pages ran flashy advertisements for a "SUPER BOWL TAKEOVER!" sponsored by 2nd To None Entertainment. (*See, e.g.*, Mot. for Default

---

[1] Parenthetical citations refer to the court's docket.

J. (#46-1) at Ex 5). The event would last all weekend long; but the main attraction was scheduled for Friday night: "'Ball So Hard, SUPER BOWL Kick-Off!' Hosted by, 'Floyd Mayweather' & 'The Money Team!'" (*Id*.) General admission was $50.00. (Doc. (#6) at ¶ 28). VIP tickets cost $100.00. (*Id*.) Tickets could be purchased online at 2nd To None Entertainment's webpage. (Doc. (#6) at Ex. 6).

Floyd Mayweather is a world-renown boxer. In 47 bouts, he has never been defeated. The Money Team is his entourage. It includes Justin Bieber, Li'l Kim, 50 Cent, Miss Jackson, and other celebrities. (Doc. (#46-1) at 3, n. 3). It is not uncommon for Mayweather and The Money Team to host parties. (Doc. (#6) at ¶ 20). In addition to being a boxer, Mayweather is a businessman and entertainer. (*Id*. at ¶ 19). In order to promote his brand, he appears at nightclubs, acts as a special guest or host, and is paid as much as $100,000.00 for his appearance. (*Id*. at ¶ 20).

When The Wine Bistro advertised that Mayweather would host their Super Bowl kickoff party, fans became excited. Posts on The Wine Bistro's Facebook page read, "I well [*sic*] be there love some money Floyd Mayweather!" and "All cash on MAYWEATHER$$$$$$$." (Doc. (#46-1) at Ex. 5). There was just one problem: neither Mayweather nor The Money Team ever agreed to appear at The Wine Bistro. (Doc. (#6) at ¶ 29).

Mayweather commenced this action four days after the Raven's victory in Super Bowl XLVII. He alleges that The Wine Bistro and 2nd To None Entertainment, LLC's false advertising violated his publicity and trademark rights by using his name and image to sell tickets. On August 13, 2013, The Wine Bistro and 2nd To None Entertainment were served. (*See* Docs. #14, #16). However, both Defendants have failed to answer or otherwise defend against Mayweather's claims. Accordingly, on September 19, 2013, the Clerk of Court entered default against Wine Bistro and 2nd To None Entertainment. (Doc. #22). Now, Mayweather moves for default judgment.

On November 5, 2014, the court held a hearing on Mayweather's motion. On November 12, 2014, Mayweather entered a notice of voluntary dismissal against all defendants except The Wine Bistro and 2nd To None Entertainment, LLC. (*See* Doc. #57). This report and recommendation follows.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs default judgment. It states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). After the Clerk of Court enters a default, the plaintiff must petition the court to obtain a default judgment. FED. R. CIV. P. 55(b)(2).

Before considering whether default judgment should be entered, the court has "an affirmative duty" to ensure that it has personal jurisdiction over the defaulted defendant and subject-matter jurisdiction over the plaintiff's action. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citing *Williams v. Life Sav. and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). A judgment without jurisdiction is void. *Id.* (citations omitted).

If jurisdiction exists, the court's decision to enter default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also Heidenthal*, 826 F.2d at 917 ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment.").[2] Generally, the court accepts the factual allegations in the plaintiff's complaint as true but requires the plaintiff to prove damages. *Televideo Video Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

---

[2] Federal Rule of Civil Procedure 54(c) limits the court's discretion in one respect. It states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

The Ninth Circuit has adopted seven factors that courts "may" consider when adjudicating a motion for default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citing 6 MOORE'S FEDERAL PRACTICE ¶ 55-05[2], at 55-24 to 55-26). The factors are: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72 (applying four of the seven factors).

## DISCUSSION

Under Rule 55, the court must engage in three inquiries when recommending default judgment against The Wine Bistro and 2nd To None Entertainment: (1) whether the court can enter default judgment (*i.e.*, does jurisdiction exist?); (2) whether the court should enter default judgment (*i.e.*, do the *Eitel* factors favor Mayweather?); and (3) whether Mayweather has proven damages. Each inquiry is addressed below.

**I.     Whether Jurisdiction Exists**

The court's analysis of Mayweather's motion begins with jurisdiction. *In re Tuli*, 172 F.3d at 712. When examining a motion for default judgment, the court has "an affirmative duty" to ensure that it has personal jurisdiction over the defaulted defendant and subject-matter jurisdiction over the plaintiff's action. *Id*. Generally, jurisdictional allegations must be plausible. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) *cert. denied*, 14-119, 2014 WL 3817554 (U.S. Oct. 14, 2014). However, on a motion for default judgment, the court accepts the plaintiff's allegations as true. *Heidenthal*, 826 F.2d at 917–18. As discussed below, the court finds that it has subject-matter jurisdiction over Mayweather's action and personal jurisdiction over The Wine Bistro and 2nd To None Entertainment.

4

### A.     *Subject-Matter Jurisdiction*

Mayweather predicates the court's subject-matter jurisdiction on 28 U.S.C. § 1332, 28 U.S.C. § 1331, and 28 U.S.C. § 1367. (Amend. Compl. (#6) at ¶¶ 14–16). As discussed below, each statute confers jurisdiction over Mayweather's action. Under 28 U.S.C. § 1332, a federal district court has original jurisdiction over actions between citizens of different states for which the amount in controversy exceeds $75,000.00. Diversity jurisdiction exists only where there is complete diversity among the parties. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (citing *Strawbridge v. Curtiss*, 3 Cranch 267 (1806)).

Mayweather's complaint satisfies section 1332's requirements. It alleges that each defendant resides in a different state (*i.e*., Georgia, Louisiana, and Wisconsin) from Mayweather, who resides in Nevada. (*See* Doc. (#6) at ¶¶ 1–12). Additionally, Mayweather alleges that "the [amount] in controversy exceeds the sum of $75,000.00, exclusive of interest and costs." (*Id*. at ¶ 14). Because the court takes these allegations are true, *see Heidenthal*, 826 F.2d at 917–18, it finds that subject-matter jurisdiction exists under section 1332.

The court also concludes that it has jurisdiction under section 1331 and 1367. Under 28 U.S.C. § 1331, a federal district court has original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." And, under 28 U.S.C. § 1367(a), a federal district court may exercise supplemental jurisdiction over state-law claims "that are so related to" federal claims.

Mayweather's complaint satisfies these statutes. It alleges that The Wine Bistro, 2nd To None Entertainment, and others falsely used Mayweather's name and image in order to sell tickets for a Super Bowl party, which Mayweather and The Money Team would host. (*See* Doc. (#6) at ¶¶ 18–49). These allegations grant the court jurisdiction because they raise a federal question under the Lanham Act,

15 U.S.C. § 1125(a). Additionally, Mayweather's state-law claims are "so related to" his Lanham Act claim that they satisfy section 1367(a)'s requirements. Each forms part of the same case or controversy and derives from a common nucleus of operative facts: Defendants' unauthorized use of Mayweather's name and likeness. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Therefore, the court concludes that it has subject-matter jurisdiction over Mayweather's action.

### B.     *Personal Jurisdiction*

Next, the court considers whether it has personal jurisdiction over The Wine Bistro and 2nd To None Entertainment. A federal district court may only exercise personal jurisdiction over a defendant if two requirements are met. *Sec. & Exch. Comm'n v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (citation omitted).[3] First, the court must have a basis for asserting jurisdiction. *Id*. That is, the plaintiff must satisfy the minimum-contacts test. *See id*. Second, the plaintiff must perfect the mechanism for asserting jurisdiction. *Id*. That is, the plaintiff must properly serve the defendant under Rule 4. *Id*.

Mayweather satisfied both requirements. With regard to the court's basis for asserting personal jurisdiction, the court may exercise jurisdiction over a nonresident defendant if three requirements are met. That is, (1) the defendant must have purposefully directed activities at a resident in the forum, (2) the plaintiff's claim arises from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002).

Here, The Wine Bistro and 2nd To None Entertainment purposefully directed activities at Mayweather because they intentionally used Mayweather's name and likeness in advertisements. These

---

[3] A federal district court may also exercise personal jurisdiction over a defendant if the defendant waives the defense of insufficient service of process and lack of personal jurisdiction. FED. R. CIV. P. 12(h)(1). Because Wine Bistro and 2nd To None Entertainment have failed to answer or otherwise defend against Mayweather's claims, this basis is not relevant.

false advertisements harmed Mayweather's reputation and business activities related to hosting parties and, therefore, had an effect in Nevada. (*See* Doc. (#6) at ¶¶ 50–55). If, as here, a nonresident defendant intentionally harms an inform resident, then the first prong of the court's jurisdictional inquiry is satisfied. *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

Mayweather's complaint also satisfies the second prong. As stated above, each of Mayweather's claims derive from the same common nucleus of operative facts: Defendants misappropriation of Mayweather's name and likeness. Therefore, Mayweather's claim "arises from the defendant's forum-related activities:" misappropriating Mayweather's name and image. *Rudzewicz*, 471 U.S. at 472.[4]

In addition to satisfying the minimum-contacts test, Mayweather perfected the mechanism for asserting jurisdiction over The Wine Bistro and 2nd To None Entertainment. That is, Mayweather properly served Defendants under Rule 4. (*See* Docs. #8, #14, #16); (*see also* Oct. 4, 2013, Order (#28) at 3, n. 8) (noting that he Wine Bistro and 2nd To None Entertainment have been served). Therefore, the court finds that it has personal jurisdiction over The Wine Bistro and 2nd To None Entertainment.

## II.     **Whether the *Eitel* Factors Favor Default Judgment**

Because the court's jurisdictional requirements are satisfied, the court proceeds to the second question: whether the court should enter default judgment under *Eitel*. This decision is discretionary and informed by seven factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable

---

[4] The court notes that the third prong—(*viz.*, whether the exercise of jurisdiction over the defendant is reasonable)—is satisfied. Where the first two prongs are met, the court presumes that the exercise of jurisdiction is reasonable and the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Rudzewicz*, 471 U.S. at 477. Because The Wine Bistro and 2nd To None Entertainment have defaulted, this inquiry is moot.

neglect; and (7) the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72; *Aldabe*, 616 F.2d at 1092. Each is addressed below.

### A.     *The First* Eitel *Factor*

The first factor—(*viz*., the possibility of prejudice to Mayweather)—favors entering default judgment. In order to promote his brand and business activities, Mayweather hosts events at nightclubs by agreeing to appear as a special guest. (*See* Doc. (#6) at ¶ 20). He is compensated for these appearances and uses the events to develop his fan base. (*Id*. at ¶¶ 20–21).

Here, The Wine Bistro and 2nd To None Entertainment prejudiced Mayweather's reputation by falsely advertising that Mayweather would appear as a special guest for a Super Bowl party when, in fact, Mayweather never agreed to appear at The Wine Bistro. Without default judgment, Mayweather has no recourse to protect his publicity and trademark rights and business interests. *See Coach Servs., Inc. v. YNM, Inc*., No. 2:10–CV–02326–JST (PLAx), 2011 WL 1752091, at *2 (C.D. Cal. May 6, 2011) (finding that the first *Eitel* factor favored the plaintiff because the defendant infringed the plaintiff's trademark rights and thereby harmed the plaintiff's reputation).

### B.     *The Second & Third Factors*

The second and third *Eitel* factors—(*viz*., the merits of Mayweather's claims and the sufficiency of his complaint)—also favor entering default judgment. To warrant default judgment, the complaint's allegations must be sufficient to state a claim upon which relief can be granted. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (Kennedy, J.). Mayweather's complaint satisfies this standard because his claims "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

Mayweather's complaint states five claims for relief that derive from the same nucleus of operative facts: (1) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (2) common law

trademark infringement; (3) violation of Mayweather's right of publicity under NEV. REV. STAT. § 597.770; (4) deceptive trade practices under NEV. REV. STAT. § 598.0915; and (5) unjust enrichment. Each is briefly addressed below.

To prevail on the first two claims—unfair competition under the Lanham Act and common law trademark infringement—Mayweather must demonstrate the same elements. *Caesars World, Inc. v. Milanian,* 247 F. Supp. 2d 1171, 1193 (D. Nev. 2003) (citations omitted). He must show that The Wine Bistro and 2nd To None Entertainment "used in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another, or as to the origin, sponsorship, or approval of its goods by another person." 15 U.S.C. § 1125(a).

Mayweather's complaint satisfies these elements. Exhibits appended to the complaint show that The Wine Bistro and 2nd To None Entertainment used actual images of Mayweather to promote their Super Bowl kickoff party. (*See* Doc. (#6) at Ex. 1–Ex. 7). This confused Mayweather's fans and Defendants' clientele. After Defendants' misappropriated Mayweather's name, individuals posted on The Wine Bistro's Facebook page that "I well [*sic*] be there love some money Floyd Mayweather" and "All cash on MAYWEATHER$$$$$$$." (Doc. (#6) at Ex. 5). Mayweather, however, never agreed to appear at The Wine Bistro. (Doc. (#6) at ¶ 29).

The same nucleus of operative facts support Mayweather's remaining claims. Under NEV. REV. STAT. § 597.770, a person has a cause of action for the unauthorized use of a person's rights of publicity in his or her name, voice, signature, photograph, or likeness. *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc*., 688 F. Supp. 2d 1148, 1161 (D. Nev. 2010) (citing NEV. REV. STAT. § 597.770). The statute prohibits others from "mak[ing] commercial use of a person's rights of publicity without written

consent." *Id*. Mayweather's complaint plausibly alleges that The Wine Bistro and 2nd To None Entertainment violated this statute. Defendants used Mayweather's name and image to sell tickets to a party without Mayweather's written consent. (Doc. #6 at ¶ 29).

This conduct also supports Mayweather's claim for deceptive trade practices under NEV. REV. STAT. § 598.0915. To prevail on this claim, Mayweather must show that The Wine Bistro and 2nd To None Entertainment "knowingly [made] a false representation [regarding Mayweather] in a transaction." *Sattari v. CitiMortgage, Inc*., 471 Fed. Appx. 627, 628 (9th Cir. 2012) (mem. dispo.). By falsely using Mayweather's name and image to sell tickets, The Wine Bistro and 2nd To None Entertainment violated NEV. REV. STAT. § 598.0915.

Mayweather's final claim is for unjust enrichment. Here, Mayweather must show that Defendants have and retain "a benefit which in equity and good conscience belongs to" Mayweather. *Unionamerica Mortg. & Equity Trust v. McDonald*, 97 Nev. 210, 212 (1981) (citation omitted). For the reasons stated above—(*viz.*, Defendants' unauthorized use of Mayweather's name and image)—the court finds that this claim is plausible.

### C. *The Remaining Four* **Eitel** *Factors*

The remaining four *Eitel* factors favor entering default judgment. The fourth factor considers the sum of money at stake in the action. *Eitel*, 782 F.2d at 1471–72. The question here is whether the damages sought are proportional to the alleged harm. *Landstar Ranger, Inc. v. Parth Enter., Inc*., 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). The court finds that it is proportional. Mayweather seeks approximately $18,000.00 in attorney's fees and costs and only $750.00 in damages. (*See* Doc. #46 at 15–16). This is commensurate with the seriousness of The Wine Bistro and 2nd To None Entertainment's misconduct. Defendants misappropriated Mayweather's name and sold $50.00 and

$100.00 tickets by falsely advertising that Mayweather—who sometimes charges as much as a $100,000.00 for his appearances—would host a Super Bowl party at The Wine Bistro.

The fifth *Eitel* factor examines the possibility of a dispute concerning material facts. *Eitel*, 782 F.2d at 1471–72. There is little possibility of a dispute here. Mayweather's complaint is plausible under *Iqbal* and supported by exhibits showing that The Wine Bistro and 2nd To None Entertainment misappropriated Mayweather's name and image. (*See* Doc. (#6) at Ex. 1–Ex. 7). This satisfies the fifth factor. *Wecosign, Inc.*, 845 F. Supp. 2d at 1082 ("Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote."); *Landstar Ranger*, 725 F. Supp. 2d at 921–22 ("Since [plaintiff] has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.").

The sixth factor considers whether Defendants' default may have been the product of excusable neglect. *Eitel*, 782 F.2d at 1471–72. This factor favors default judgment where, as here, the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit. *Landstar Ranger*, 725 F. Supp. 2d at 922; (*see also* Docs. #14, #16) (showing that Defendants were properly served); (*see also* Doc. #10) (showing that The Wine Bistro's general manager has actual knowledge of the action because he filed a *pro se* answer).

The final factor—(*viz.*, the strong policy favoring decisions on the merits)—also favors Mayweather. The Wine Bistro and 2nd To None Entertainment refuse to participate in litigation despite being served and having actual knowledge of Mayweather's claims. Rule 55 was designed to address this problem. *Landstar Ranger*, 725 F. Supp. 2d at 922. Where, as here, it is impossible to adjudicate an action on the merits because a defendant refuses to participate in litigation, the strong policy favoring

decisions on the merits is outweighed by the need to finalize controversies in a timely and orderly fashion. Therefore, Mayweather's Motion for Default Judgment should be granted.

### III.     **Whether Mayweather has Proven Damages**

Having determined that default judgment should be entered, one issue remains: whether Mayweather has proven damages, entitlement to injunctive relief, and entitlement to attorney's fees and costs. Each is addressed below.

#### A.     *Mayweather's Request for Monetary Damages Should be Granted*

Each of Mayweather's claims for relief entitles prevailing plaintiffs to monetary damages. Here, however, Mayweather only seeks the statutory minimum on one claim: Nevada's right of publicity statute, NEV. REV. STAT. § 597.810. Under the statute, a plaintiff is entitled to "not less than $750.00 in actual damages." *Id*. The Nevada Supreme Court has determined that plaintiffs are entitled to recover a minimum of $750.00 under the statute even if no damages can be proven. *Hetter v. Eighth Judicial Dist. Court*, 110 Nev. 513, 519 (1994). This minimum exists to discourage the misappropriation of a person's right to publicity. *Id*.

Here, Mayweather seeks the statutory minimum for two reasons. First, Mayweather contends that The Wine Bistro and 2nd To None Entertainment's violation of his publicity rights was knowing. The court agrees. Despite receiving a cease and desist letter, The Wine Bistro and 2nd To None Entertainment left images and video of Mayweather on their respective websites. Second, Mayweather also seeks the statutory minimum because Defendants' refusal to participate in litigation prevented him from proving actual damages. The court finds an adequate basis for awarding tremble the minimum amount (i.e., $2,250.00).

### B. *Mayweather's Request for Injunctive Relief Should be Granted*

In addition to seeking money damages, Mayweather's complaint also seeks permanent injunctive relief. (Doc. (#6) at 12, ¶ 2). The Lanham Act vests district courts with power to grant permanent injunctions as they "deem reasonable." 15 U.S.C § 1116(a) ("[C]ourts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable."). When deciding whether to issue a permanent injunction, the court must consider whether (1) the plaintiff suffered an irreparable injury, (2) remedies available at law are inadequate, (3) the balance of hardships favor the plaintiff, and (4) the public interest favors a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citing, *inter alia*, *Weinberger v. Romero—Barcelo*, 456 U.S. 305, 311–313 (1982)).

These factors favor Mayweather. The first two factors favor Mayweather because "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by the threat of continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

The third factor—(*viz*. the balance of hardships)—also favors Mayweather. Without a permanent injunction Mayweather will lose profits, goodwill, and suffer damage to his reputation. The Wine Bistro and 2nd To None Entertainment, by contrast, will suffer no hardship. The entry of a permanent injunction will only require them to obey the law. *See Wecosign, Inc.*, 845 F. Supp. 2d at 1084.

Finally, an injunction is in the public interest because the consumers have an inherent interest in avoid confusion regarding their purchases. *Internet Specialties West, Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n. 5 (9th Cir. 2009).

### C. *Mayweather's Request for Attorney's Fees & Costs Should be Granted*

The court also finds that Mayweather should be awarded attorney's fees and costs. The Lanham Act, 15 U.S.C. § 1117(a), permits the prevailing party to recover attorney's fees and costs.[5] Section 35(a) provides that a court may award attorneys' fees to the prevailing party in "exceptional cases." *Id*. A trademark case is exceptional when the infringement is malicious, fraudulent or willful. *Earthquake Sound Corp. v. Bumper Indus*., 352 F.3d 1210, 1216 (9th Cir. 2003). Where, as here, the plaintiff's complaint alleges willful infringement and the court accepts the plaintiff's allegations as true on a motion for default judgment, an award of attorney's fees and costs automatically follows. *King Taco Rest., Inc. v. King Taco Express, Inc*., No. 2:08–cv–281–LRH, 2010 WL 2817200, at *2 (D. Nev. July 16, 2010) (citing *Derek Andrew, Inc. v. Poof Apparel Corp*., 528 F.3d 696, 702 (9th Cir. 2008)).

Here, Mayweather requests $17,408.48 in attorney's fees and $1,084.40 in costs. (*See* Doc. (#46) at Ex. A, Ex. B). This amount reflects the legal fees Mayweather incurred from January 30, 2013, through November 19, 2013. (*Id*.) Mayweather supports his request for attorney's fees with his attorney's affidavit and records itemizing the work performed and fees incurred. (*See* Tratos Aff. (#46) at 19–21, Ex. A).

To determine reasonable attorney's fees, courts in the Ninth Circuit use the "lodestar" method. Under this method, the court multiplies the reasonable hourly rate by the number of hours reasonably expended in the litigation. *Morales v. City of San Rafael*, 96 F.3d 359, 363–65 (9th Cir. 1995). In calculating the lodestar figure, the court considers the following the factors: (1) the time and labor

---

[5] Mayweather's Nevada's Deceptive Trade Practices Act, NEV. REV. STAT. 41.600, claim and common law trademark infringement claim provide alternative bases for an award of attorney's fees and costs. *Caesars World, Inc*., 247 F. Supp. 2d at 1206–07 (citing *7-11 Minit Markets, Inc. v. Southland Corp*., 301 F. Supp. 1000, 1001 (D. Nev. 1969)).

required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service properly; (4) the preclusion of employment to the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed on the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case, if any; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 n. 3 (9th Cir. 2000) (citing *Kerr v. Screen Guild Extras, Inc*., 526 F.2d 67, 70 (9th Cir. 1975)).

The first step in setting reasonable attorney's fees is to determine the number of hours Plaintiff's attorneys reasonably expended on the litigation. *Morales*, 96 F.3d at 363–65. Relevant *Kerr* factors include (1) the time and labor required, (2) the results obtained and the amount involved, and (3) the novelty and difficulty of the questions involved.

Here, Mayweather's counsel expended approximately 42.3 hours on Mayweather's action between January 30, 2013, and November 19, 2013. (*See* Doc. (#46) at Ex. A). This time was primarily used to (1) investigate Mayweather's claims against The Wine Bistro and 2nd To None Entertainment and (2) secure default judgment against them. (*See id*.) The court finds that 42.3 hours is reasonable in light of the nature of Mayweather's claims.

The second step in setting the reasonable attorney's fees is to determine a reasonable hourly rate. The controlling test for determining a reasonable hourly rate requires the rate to be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984) (holding that the reasonable rate to apply under section 1988 is the rate commonly charged in the local legal community); *Welch v. Metro. Life Ins Co*., 480 F.3d 942, 946 (9th Cir. 2007). "[N]ormally the relevant legal community for

determining the prevailing market rates for attorney's fees is the community in which the forum is situated." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1993).

Here, the relevant community is Las Vegas, Nevada and Mayweather's attorneys at Greenberg Traurig, LLP charged between $295.00 and $675.00 per hour. (*See* Doc. (#46) at Ex. A). These fees are reasonable in Las Vegas. *See, e.g.*, *Marrocco v. Hill*, 291 F.R.D. 586, 589 (D. Nev. 2013) (finding hourly rates between $375.00 and $400.00 reasonable in Las Vegas); *Snow v. McDaniel*, No. 3:08–cv–00046–RCJ–VPC, 2014 WL 590489, at *1 (D. Nev. Feb. 14, 2014) (Jones, J.) (finding a $250.00 hourly rate reasonably within the context of a section 1988 inquiry); *see also Gibbs v. Rivers Transp. Group, Inc.*, No. 2:13–cv–00935–JAD–NJK, 2014 WL 204928, at *3 (D. Nev. Jan. 17, 2014) (finding a $250.00 hourly rate reasonable in Las Vegas); *Conboy v. Wynn Las Vegas, LLC*, No. 2:11–cv–01649–JCM–CWH, 2012 WL 6100313, at *3 (D. Nev. Dec. 7, 2012) (same); *Am. Gen. Life Ins. Co. v. Futrell*, No. 2:11–cv–00977–PMP–CWH, 2012 WL 5497901, at *3 (D. Nev. Nov. 13, 2012) (finding hourly rates between $250.00 and $400.00 reasonable in Las Vegas).

The final step in determining the reasonable attorney's fees is to multiply the number of hours reasonably worked by the reasonable hourly rate for each person who performed the work. Here, that calculation yields a total of $17,408.48. There is a "strong presumption" that the lodestar figure represents a reasonable fee that the court should enhance or reduce only in rare and exceptional cases. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987); *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). The court sees no need to adjust the lodestar figure here.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Floyd Mayweather's Amended Motion for Default Judgment (#46) be GRANTED.

IT IS RECOMMENDED that Floyd Mayweather be awarded DAMAGES in the amount of $2,250.00.

IT IS RECOMMENDED that Floyd Mayweather be awarded ATTORNEYS' FEES in the amount of $17,408.48.

IT IS RECOMMENDED that Floyd Mayweather be awarded COSTS in the amount of $1,084.

IT IS RECOMMENDED that The Wine Bistro, 2nd To None Entertainment, their "officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with" them, *see* FED. R. CIV. P. 65(d)(2), be ENJOINED "from using the Plaintiff's name and likeness for commercial gain." (*See* Amend. Compl. (#6) at 12:7–8).

IT IS FURTHER RECOMMENDED that, all other Defendants having been voluntarily dismissed, (*see* Doc. #57), FINAL JUDGMENT be entered against The Wine Bistro and 2nd To None Entertainment.

IT IS SO RECOMMENDED.

## NOTICE

Pursuant to Local Rules IB 3-1 and IB 3-2, a party may object to orders and reports and recommendations issued by the magistrate judge. Objections must be in writing and filed with the Clerk of the Court within fourteen days. LR IB 3-1, 3-2. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 17th day of November, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE